# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==================
## NO. 03-05-00331-CV
==================

**Texas Department of Public Safety, Appellant**

**v.**

**James Joseph Briggs, Appellee**

==========================================================================
### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 283,488, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING
==========================================================================

## M E M O R A N D U M   O P I N I O N

The Texas Department of Public Safety appeals the county court at law's reversal of an administrative decision, entered after a contested case hearing, authorizing the suspension of the driver's license of James Joseph Briggs. *See* Tex. Transp. Code Ann. § 724.042 (West Supp. 2005). In two issues, the Department argues that the trial court erred in reversing the decision of the administrative law judge because (i) the decision was supported by substantial evidence and (ii) there was reasonable suspicion to investigate a collision occurring in the parking lot of an apartment complex. We reverse and render judgment affirming the administrative law judge's decision.

On May 9, 2004, at approximately 10:30 p.m., an Austin police officer was dispatched to an apartment complex to investigate a two-car motor vehicle accident. Upon arrival at the accident scene at the apartment complex, the officer observed a truck with three males standing by it and a second truck occupied by Briggs who was seated behind the wheel of his

vehicle. Although part of the apartment complex was gated, this portion of the lot was not gated and was open to the public. The officer approached Briggs, asked if he was injured and then requested his driver's license and proof of insurance. Briggs told the officer that he was the driver and only occupant, that he had backed into the other parked vehicle, and that he was willing to pay for it. As they conversed, the officer smelled an odor of alcohol coming from Briggs's breath and observed that his eyes were glassy and his speech was slurred. Briggs admitted to consuming three or four beers earlier in the night.

The officer then asked Briggs to perform field sobriety tests. As the officer administered the horizontal gaze nystagmus test and Briggs exhibited lack of smooth pursuit and distinct nystagmus at maximum deviation in both eyes, the officer stopped the test because Briggs could not follow directions and almost fell into another officer. When Briggs almost fell during the walk-and-turn test, the officer stopped the test, believing that Briggs was intoxicated. The officer arrested Briggs for driving while intoxicated. Briggs refused to provide a breath or blood specimen upon the request of the officer.

The Department sought the suspension of Briggs's driver's license at a hearing before an administrative law judge. At the suspension hearing before the ALJ, Briggs raised a single issue: that the officer did not have reasonable suspicion to detain Briggs because the collision occurred in a parking lot of an apartment complex, which is not a "public place" under the relevant statute. After the ALJ suspended Briggs's driver's license, Briggs appealed to the county court at law. The trial court granted the petition and reversed the administrative decision, finding that the officer did not have reasonable suspicion to detain Briggs because he was on private property.

The Department now appeals the trial court's order reversing the administrative decision and removing the suspension of Briggs's driver's license. In two issues, the Department contends that the trial court erred in reversing the ALJ's decision because that decision was supported by substantial evidence and the trial court erred in finding that Briggs was not operating his vehicle "in a public place." Applying a substantial evidence standard to an administrative license suspension, *see* Tex. Transp. Code Ann. § 524.043 (West 1999), *see also Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999), a reviewing court reverses an ALJ's decision only if an appellant's substantial rights have been prejudiced and the ALJ's findings are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann. § 2001.174 (West 2000); *Texas Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 244 (Tex. App.—Austin 1997, no writ).

To uphold a license suspension, an ALJ must find that the Department has proven all elements of section 724.042 by a preponderance of the evidence. *See* Tex. Transp. Code Ann. § 724.042. Those elements are as follow:

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated;

(3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

3

(4) the person refused to submit to the taking of a specimen on request of the officer.[1]

*See id.* When rendering her decision, the ALJ issued findings of fact that included the following:

- The officer was investigating a two-car collision at an apartment complex parking lot;

- The other driver identified Briggs as the driver of the vehicle that had collided with his legally parked vehicle in the parking lot;

- The collision occurred in a parking lot that was accessible to the public;

- Briggs was sitting in the driver's seat of his vehicle, admitted that he had hit the parked car and offered to pay the cost of the damage;

- The officer had reasonable suspicion to stop Briggs to investigate the accident and probable cause to arrest him for failure to perform the field sobriety tests; and

- Briggs was requested to and refused to give a breath or blood specimen.

On appeal, Briggs relies on section 550.041 of the transportation code, urging that the police do not have authority to investigate an accident in a "privately owned residential parking area." Section 550.041 provides:

---

[1] Section 724.035 of the Texas Transportation Code provides for suspension or denial of a driver's license:

(a) If a person refuses the request of a peace officer to submit to the taking of a specimen, the department shall:

(1) suspend the person's license to operate a motor vehicle on a public highway for 180 days. . . .

Tex. Transp. Code Ann. § 724.035 (West Supp. 2005).

4

(a)  A peace officer who is notified of a motor vehicle accident resulting in injury to or death of a person or property damage to an apparent extent of at least $1,000 may investigate the accident and file justifiable charges relating to the accident *without regard to whether the accident occurred on property to which this chapter applies.*

(b)  This section does not apply to:

(1)  *a privately owned residential parking area*; or

(2)  a privately owned parking lot where a fee is charged for parking or storing a vehicle.

*Id.* § 550.041 (West Supp. 2005) (emphasis added).  It is undisputed that the portion of the lot where the collision occurred was not gated and that it was accessible to the public.

The history of section 550.041 is instructive.  Its predecessor statute provided in section 43A for a peace officer to investigate an accident and file charges without regard to whether the accident occurred on

> a public street or highway or other public property, on a road owned and controlled by any water control and improvement district, whether or not a fee is charged for the use of the road, or on private property commonly used by the public such as supermarket or shopping center parking lots, parking areas provided by business establishments for the convenience of their customers, clients, or patrons, parking lots owned and operated by the State *or any other parking area owned and operated for the convenience of, and commonly used by, the public.*

*See* Act of May 27, 1967, 60th Leg., R.S., ch. 526, § 2, sec. 43A, 1967 Tex. Gen. Laws 1175, 1175-76 (amended 2001) (current version at Tex. Transp. Code Ann. § 550.041 (West Supp. 2005)) (emphasis added).  Thus, prior to its recodification in the transportation code, the statute specified that a peace officer was permitted to investigate some accidents occurring on private property but

not others. The Revisor's Note to the current version of the statute states that the phrase "property to which this chapter applies" was substituted for the list included in the prior statute "because Section 550.001 of this code provides that this chapter is applicable to all of the properties listed specifically in Section 43A." Tex. Transp. Code Ann. § 550.041 (West 1999) (revisor's note). This language then would suggest that the current chapter 550 relating to accidents and accident reports applies to public property as well as certain private properties, including parking areas, commonly used by the public.

Section 550.001 provides that chapter 550 applies to, *inter alia*, "a highway or other public place" and "a private access way or parking area provided for a client or patron by a business, *other than a private residential property*." *Id.* § 550.001(3), (2) (West 1999). Briggs does not cite to any authority for the proposition that a parking lot of an apartment complex that is accessible to the public is "private residential property." *Id*.

Briggs relies instead on the case of *Ballman v. State*, 157 S.W.3d 65, 73 (Tex. App.—Fort Worth 2005, pet. ref'd), for the proposition that a citizen may not be detained in a private parking lot. *Ballman* is distinguishable. In *Ballman*, the court found that the defendant was improperly stopped and then detained for failure to use a turn signal in a shopping center parking lot. As the parking lot was not a highway, but a parking lot, neither the transportation code nor the city's municipal code required a turn signal. *Id*. at 70; *see* Tex. Transp. Code Ann. §§ 542.001, 545.104 (West 1999) (operator of vehicle is required to use a turn signal to indicate an intention to turn when vehicle is being operated on highway). But Briggs cites no authority that a peace officer may not investigate a collision in a shopping center or other commercial parking lot that is open to the public;

6

nor does he cite any authority that such a parking lot is a "privately owned residential parking area." To the contrary, section 550.041 allows a peace officer to investigate an accident involving property damage exceeding $1,000 "without regard to whether the accident occurred on property to which this chapter applies." *See* Tex. Transp. Code Ann. § 550.041. And, in any event, as the history of section 550.041 makes clear, an officer may investigate an accident on "any parking lot owned by the State or any other parking area owned and operated for the convenience of, and commonly used by, the public." *See* Act of May 27, 1967, 60th Leg., R.S., ch. 526, § 2, sec. 43A, 1967 Tex. Gen. Laws 1175, 1175-76 (amended 1995, 2001) (current version at Tex. Transp. Code Ann. § 550.041 (West Supp. 2005)).[2]

In any event, it is clear that an ungated parking lot open and accessible to the public is a "public place" within the meaning of section 724.042. *See* Tex. Transp. Code Ann. § 724.042. A public place is defined as "any place to which the public or a substantial group of the public has access." Tex. Pen. Code Ann. § 1.07(a)(40) (West 2003). The remaining portion of section 1.07(40) contains a nonexclusive list of illustrative examples, including "but not limited to, streets, highways, and the common areas of schools, hospitals, *apartment houses*, office buildings, transport facilities,

---

[2] In addition, a police officer may arrest, without a warrant, a person found in a suspicious place and under circumstances that reasonably show the person had been guilty of some felony or breach of the peace. Tex. Code Crim. Proc. Ann. art. 14.03(a)(1) (West 2005). DWI is a breach of the peace. *Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004). Whether a place is suspicious depends on the totality of the circumstances. *See Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003). Suspicious places may include the scene of an accident. *Id*. at 468; *Layland v. State*, 144 S.W.3d 647, 650 (Tex. App.—Beaumont 2004, no pet.) (scene of accident considered "suspicious place").

and shops." *Id.* (emphasis added). In determining whether a place is public, the relevant inquiry is whether the public has access to it. *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.—Fort Worth 2003, no pet.); *Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.); *State v. Nailor*, 949 S.W.2d 357 (Tex. App.—San Antonio 1997, no pet.). Courts have consistently held that parking lots are public places. *See, e.g., In re W.T.O.*, No. 03-01-00630-CV, 2002 Tex. App. LEXIS 8214, at *7 (Austin Nov. 21, 2002, no pet. h.) (mem. op.) (apartment house parking lot); *Nailor*, 949 S.W.2d at 359 (hotel parking garage even though people must pay to enter); *Kapuscinski v. State*, 878 S.W.2d 248, 250 (Tex. App.—San Antonio 1994, pet. ref'd) (mall parking lot); *Thibaut v. State*, 782 S.W.2d 307, 309 (Tex. App.—Eastland 1989, no pet.) (parking lot of condominium complex). As the court observed in *Kapuscinski*, the definition of public place is cast in broad language. 878 S.W.2d at 250.

Here, the undisputed evidence was that the apartment complex parking lot was ungated and open to the public. We hold that the parking lot is a public place, falling squarely within the statutory definition. *See* Tex. Pen. Code Ann. § 1.07(a)(40). The findings were based on the facts that the officers had been summoned to investigate a collision in the apartment complex parking lot that was open to the public, Briggs admitted to driving and causing the collision, Briggs exhibited signs of intoxication, and he refused to provide a breath or blood specimen. We conclude that there was substantial evidence to support the ALJ's findings that the officer had reasonable suspicion to detain Briggs, probable cause to believe he was operating a motor vehicle in a public place while intoxicated, and that Briggs refused to submit to the taking of a specimen upon arrest and the request of the officer.

8

Having found that the trial court applied an erroneous legal standard and erred in reversing the ALJ's administrative decision, we sustain the State's issues. We reverse the trial court's order and render judgment upholding the administrative decision authorizing the suspension of Briggs's driver's license.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Reversed and Rendered

Filed:   February 9, 2006

9